MOORE (WALKER v.). See Case No. 17,080.

---

## Case No. 9,779.

MOORE et al. v. WALTON et al.

[9 N. B. R. (1874) 402.] [1]

District Court, N. D. Mississippi.

PARTNERSHIP — MONEY ADVANCED — RIGHT OF ELECTION—BANKRUPT ACT.

A was an experienced merchant, without means. B and C each had some money which they were willing to risk in a mercantile enterprise, but did not intend to render themselves liable for the debts of the concern, should it prove unsuccessful. B and C advanced the money to purchase the stock of merchandise, the business to be carried on in A's name, giving B and C the option to share in the profits, if successful, and if not, then to receive back the amount advanced with ten per cent. interest. *Held*, that B and C did not have such an interest in the business as to render them liable as partners, within the meaning of the bankrupt act, the evidence showing there was never an election, on the part of B and C, to share in the profits, and a partnership inter se was never entered into. Petition dismissed as to B. and C.

In bankruptcy.

HILL, District Judge. This is a petition in involuntary bankruptcy, filed by petitioners against the defendants, J. C. Walton, H. W. Berkley and Wm. F. Parks, charging that the said defendants were co-partners, doing business as merchants in the village of Red Banks, in this district, under the firm name and style of J. C. Walton, and that as such they-did, within six months before the filing of the petition, commit an act of bankruptcy within the meaning of the bankrupt law [of 1867 (14 Stat. 517)], in this, that they suspended the payment of their commercial paper, and did not resume payment within fourteen days. The petition further charges that the defendants had fraudulently, and with a view of defeating

[1] [Reprinted by permission.]

the petitioners and their other creditors of said firm, combined together to place their assets and means beyond the reach of their creditors. That said Parks and Berkley were dormant and secret partners of said firm, contributing the capital and receiving part of the profits, and that to avoid liability as such the said Walton had executed a pretended deed of trust to one Gandum, upon the pretence of conveying to him all his goods, debts, &c., as security for a pretended debt due from said Walton to Berkley, and that Walton had conveyed or was about to do so, and invested in property in Tennessee in the name of his wife, a large portion of the money belonging to said firm. The defendants have filed separate answers denying the partnership and denying that Berkley and Parks ever had any interest in the business other than that they each had loaned Walton one thousand dollars at ten per cent. interest, for the purpose of purchasing the stock; that Berkley, as a friend of Walton, had paid Parks, and for repayment of this sum and the amount advanced by himself, took the trust deed mentioned, and deny all fraud charged. Walton admits his insolvency and suspension and non-resumption of payment of his commercial paper as charged; so that so far as he is concerned there is no doubt of his having committed an act of bankruptcy, and must be so declared.

The difficult question to be determined under the facts as established by the proof, under the rules of law as applied thereto, is as to whether Berkley and Parks were partners, either as secret partners, as charged; or, if not, whether they had so held themselves out to the world as partners as to render them liable to be declared bankrupts as such. I must admit that of the many cases brought before and considered by me under the bankrupt law, I have never found one so difficult of a satisfactory solution, either as to the facts or the law. Without entering into a particular analysis of the proof, I will state the facts which to my mind it establishes. Walton was an experienced merchant, but without means. Berkley and Parks each had some money which they were willing to risk in a mercantile enterprise, but did not intend to render themselves liable for the debts of the concern should it prove unsuccessful; to avoid this they advanced the money to purchase the stock of merchandise, the business to be carried on in Walton's name alone, giving to them the option to share in the profits if successful, or if not successful, then to receive back the amount advanced with ten per cent. interest. The business was conducted with this understanding, until in January, 1870, when Parks, becoming dissatisfied, demanded a settlement, which was made, and Berkley executed to him his note for the balance due him, which was afterwards paid, and he ceased to have any

further connection with it. Berkley continued under the original agreement until the failure of the business, about the end of the year 1870, when he took possession of the remnant of the merchandise and debts, claiming under the trust deed dated in April previous, but not admitted to record until the last of October, 1870. The notes executed to petitioners were executed upon the 4th of June, 1870. The proof shows that both Parks and Berkley aided Walton in the sale of the goods, and that both manifested an interest in the business, the former up to the settlement stated, and the latter up to the failure, inconsistent with any other conclusion than that they were either interested in it, or contemplated becoming so. This is especially shown by the conduct of the parties about the time and during the settlement with Parks in January, 1870. The most remarkable conclusion is that neither had determined whether to take a share of the profits or the money with interest up to the falling out between Parks and Walton in January, 1870, when he elected to take his money with interest, which he, as between themselves, had a right to do under the agreement; and that Berkley did not make his election until the filing of the trust deed for record, last October, 1870, and perhaps not until the business was broken up, shortly before this petition was filed, when he claims, as a creditor and not as a partner, to take what was left. Walton denies that he took anything with him, and there is no proof that he did, and, if not, Berkley got all that remained.

The above conclusions are fairly deducible from the proof. The question is, do they establish in Berkley and Parks, or either of them, such an interest in the business as to render them liable as partners within the meaning of the bankrupt law? Partnerships are formed in various ways; usually it is an agreement between two or more, in which it is stipulated that the parties will contribute their capital and skill, one or both, in an enterprise, and share the profits and bear the losses in such proportions as may be agreed upon. It matters not what that proportion may be, one may have more, another less, the extent of the interest being immaterial, but the quality of it must be the same; each must have a voice in controlling the business, and each is the agent for his co-partners with authority to bind them in reference to matters within the scope of the co-partnership business. These are the principal elements of a general partnership. Or as between themselves one may furnish the capital and another transact the business. The business may be conducted in such name as the members may choose to adopt. Some may be secret or dormant members of the firm, and unknown to the world, or to any but themselves; yet if such members have an interest in the profits as such, it will render them liable for all the contracts entered into by the firm within the scope of the co-partnership business. Again, one having, as between himself and the other member or members of the firm, no interest whatever, either in sharing the profits or bearing the losses, yet by holding himself out to the world as a partner may render himself liable as such to those dealing with the firm; he may be willing to give his credit to it, and this is usually done by permitting his name to be used as a member of the firm, or by representing himself as such. Those dealing with the firm have no interest, in questions of interest as between the members themselves. Or one representing himself, to an individual or an individual firm, as a member of a firm, will be liable to those to whom he thus represents himself for any contract made with such person or persons by such firm, but if such representation is confined to those to whom made, with the restriction that it is not to be repeated to another, the liability will be limited to those to whom the representation is made. If no restriction is imposed, then the repetition of the representation so made, by those to whom made, to others, will bind the party, for by his representation without restriction he has added, by credit, to the firm, and must be held by it.

These being some of the general rules, what is the result when applied to the facts as forced from the proof? I am inclined to the opinion that there was no partnership as between themselves, without an election to share in the profits, and that, although both Parks and Berkley contemplated making such election, it was never in fact made, and that a partnership inter se was never entered into. I am, however, inclined to the opinion that their acts and conduct in relation to the business was such as to justify those who gave credit to the business conducted in the name of J. C. Walton, to believe that they were partners and to render them liable for contracts as were made upon the belief that they were such partners. But the difficult question of solution is, can they, for such liability, be proceeded against as partners under the bankrupt law? This is a question of first impression in this or any other court, so far as I am informed, and is one of importance. This involuntary feature of the bankrupt law is punitive in its character and effects, and, as such, should only be applied to those who do some act forbidden by the law, or who fail to do some act required by it. It is not the contracting the debt or debts only, that constitutes the act of bankruptcy, but it is something that is done or neglected to be done afterwards, and contemplates the power in each individual to refrain from doing the thing forbidden, or having the power to do the thing required. This, every partner is presumed to possess, but one who has only lent his credit to the firm by holding himself out as

such and thereby liable to those who gave credit upon that account, having no interest in the business, or having no voice in the control over its affairs, has not such power, and such being the case, it seems, ought not to be subject to this feature of the law, whilst he may be liable in action at law, or other legal proceedings, for the debts incurred by the firm, upon the faith of his liability, by reason of his acts or words in so holding himself out, either to one or more individuals, or to the public in general, and if the latter, then he would be bound, whether the party giving the credit knew it or not, for if he held himself out as such to the public, the public, or any member of it, had a right to give him credit. If I am correct in these conclusions it follows that neither Parks or Berkley can be declared bankrupts under these proceedings, although they may be liable to the creditors in a proper action brought for that purpose, which, as a matter of course, cannot be adjudged in this proceeding. But the case, as now presented by the pleadings and proof, shows that the stock of merchandise seized by the marshal, and the debts due to J. C. Walton, or their proceeds, belong to said Walton, and are subject to the payment of his debts, and for that purpose the title to the same will vest in the assignee when one shall have been appointed, and until that is done the provisional assignee will take all necessary steps to collect the same. The question as to the validity of the trust deed, not being directly put in issue in this proceeding is reserved, but this does not interfere with the right of the assignee to collect all the debts due, as though no such conveyance had been made.

The judgment of the court, therefore, is that the proceedings be dismissed as to defendants Parks and Berkley, and that J. C. Walton be declared a bankrupt; that warrant issue and all other regular proceedings be had as in such cases. It is further ordered that the provisional assignee pay the costs of this proceeding, out of the funds in his hands, as such assignee, and that he also refund, out of the same, to petitioners the amount deposited by them and paid as costs.